## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| | : | |
| SANDRA GERMAN | : | |
| | : | |
| v. | : | Civil No. CCB-11-1242 |
| | : | |
| AKAL SECURITY, INC., MARYLAND | : | |
| AVIATION ADMINISTRATION | : | |
| | : | |
| | : | |

### MEMORANDUM

Plaintiff Sandra German brings this action against Akal Security, Inc. and the

Maryland Aviation Administration ("MAA") for violation of Title VII of the Civil Rights

Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e-17.  German also brings a parallel

employment discrimination claim under Maryland's state employment discrimination

statute, Md. Code Ann. State Gov't §§ 20-601 to -606, and related state common law

claims for defamation and intentional infliction of emotional distress ("IIED").  Akal

Security has filed a 12(b)(6) motion to dismiss, and the MAA has filed a motion to

dismiss, or in the alternative, for summary judgment.  German has filed a response to

Akal Security, and she requested leave to amend her pleadings to the extent necessary.

She has also filed a response to the MAA, including an affidavit addressing where

discovery is necessary prior to summary judgment.  Both defendants filed replies.  No

oral argument is necessary.  *See* Local Rule 105.6 (D. Md. 2011).


### BACKGROUND

1

German, a Caucasian woman, began working for Akal Security as a security guard in May of 2005. (Compl. ¶ 24.) Akal assigned her to work at the Baltimore-Washington International airport ("BWI"), where the company provided security services under a contract with the MAA. German worked for Akal as a security guard, and then as a compliance officer, until she was discharged on October 18, 2007. (*Id.* at ¶ 51.)  During her two years at BWI, German claims to have been the target of a "campaign of harassment and discrimination" based on her race and gender. (*Id.* at ¶ 29.)  She filed a complaint with the Equal Employment Opportunity Commission ("EEOC") against Akal Security on May 30, 2007. (*Id.* at 16; ECF No. 9, Ex. 1.)  And, after her termination, she filed a complaint with the Maryland Commission on Human Relations ("MCHR") against the MAA, alleging similar discrimination and retaliation. (Compl. ¶ 20.)[1]

In her complaint, German alleges that co-workers began harassing her after she was designated as Akal's "Employee of the Month." (*Id.* at ¶¶ 28, 29.)  According to German, this harassment came "primarily from co-workers who were African-American and/or Black." (Compl. ¶ 30.)  The complaint lists no dates or specific instances of discrimination, or any specific words used; it simply states broadly that other Akal employees "initiated a campaign of harassment and discrimination," that this was "based upon [German's] race and gender," and that it included "numerous statements threatening physical injury and destruction of Plaintiff's personal property." (*Id.* at ¶ 29.)  German

---

[1] In the complaint, German cites to an MCHR charge filed in September 2008 under Charge Number 531-2008-00215C. (*Id.*)  The MAA, however, suggests that German is mistaken, and the charge was in fact filed on March 28, 2008, with the EEOC, and with the charge number of 531-2008-00787C.  (ECF No. 11, at 4 n.3).  The MAA has attached a copy of this March 28, 2008, EEOC charge to its motion. (*Id.* Ex. A). It is unclear to the court whether this is the same charge that German refers to, or a separate, prior, charge.  For the purposes of weighing this motion to dismiss, we assume the facts as alleged in the complaint to be true.

alleges that she reported the "persistent harassment and discrimination to her Akal supervisors" but that they refused to take action and in fact began "their own crusade of harassment and discrimination." (*Id.* at ¶¶ 31–32.)

During a period of time beginning in August 2005, when she was briefly supervised by a different individual, German was promoted to the position of compliance officer, "wherein she worked in an office operated by the MAA." (*Id.* at ¶ 35.) Thereafter, according to the complaint, she was subject to further harassment by her former supervisor, who "did not approve" of the promotion. (*Id.* at ¶ 36.) German reported this harassment to "supervisors at the MAA," but, she alleges, they also refused to take any action to correct the matter. (*Id.* at ¶ 37.)

In the complaint, German cites five specific events that she alleges constituted harassment and retaliation. First, she reports that the FBI investigated her and eventually issued her a citation, though the citation "was subsequently found groundless and was dismissed." (*Id.* at ¶ 41.) According to German, the FBI investigation "was undertaken as a result of Defendant's actions," presumably referring to Akal. (*Id.* at ¶ 40.)[2] Second, German alleges that one of her Akal supervisors defamed her in the wake of the investigation by misinforming other employees that she had been "arrested" and that she was a "felon." (*Id.* at ¶ 42.) Third, German alleges that she was "demoted" from her position in the MAA office and returned to her position as a security guard with Akal as

*Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

[2] It is not clear from the complaint when the FBI investigation took place, though the order of the facts provided makes it appear to have taken place sometime after her promotion, after August 2005, but before she eventually had a stroke and panic attack in April of 2007. The March 2008 EEOC charge against the MAA, however, makes it seem as though the FBI investigation took place *after* her May 30, 2007 EEOC charge was filed.

retaliation for having complained about the discriminatory conduct. (*Id.* at ¶ 44.)  This

demotion occurred after German had been hospitalized because of a stroke and panic

attack she suffered, allegedly as a result of the harassment. (*Id.* at ¶ 43.)  Fourth, upon

returning to her former position within Akal, German alleges that her Akal supervisor

took away her computer, removed her from her desk, and "relocate[d] her work-space to

a closet." (*Id.* at ¶ 46.)  Finally, German was taken off the BWI contract and subsequently

fired as a result of a letter from an MAA staffer to Akal "instructing that [German] was to

be immediately removed from her duties as a security officer at BWI." (*Id.* at ¶¶ 50–51.)

      After a three year delay, both the EEOC and the MCHR eventually issued "right

to sue" letters in response to German's formal charges. (*Id.* at ¶¶ 18, 21.)  In addition, the

EEOC issued a determination letter regarding German's complaint against Akal, stating

that "credible witness testimony was obtained in support of Plaintiff's allegations of

racial harassment, that Akal was aware of the racial harassment and that Akal failed to

take effective and timely action to stop the harassment on the basis of race." (*Id.* at ¶ 52;

ECF No. 21, Ex. A.) No finding was made with regard to harassment based on gender or

"any other basis and issue." (ECF No. 21, Ex. A.)

      Pursuant to the "right to sue" letters, German filed an action against both Akal

and the MAA in this court.  The complaint includes four counts.  Count I alleges race and

gender discrimination under three different statutes: Title VII of the Civil Rights Act of

1964, as amended, 42 U.S.C. §§ 2000e to 2000e-17; the Civil Rights Act of 1991, 42

U.S.C. §§ 1981, 1981a; and the State of Maryland's Civil Rights Preservation Act of

2006 ("CRPA"), codified at Md. Code Ann. State Gov't §§ 20-601 to -606, -1013.  Count

II contains a claim for intentional infliction of emotional distress ("IIED"), as well as

violations of Title VII and the CRPA for subjecting German to a hostile work

environment.  Count III alleges retaliation by defendants under Title VII and the CRPA.

Count IV contains a claim for defamation *per se*, though German now agrees this claim is

barred by the statute of limitations.

The two defendants filed separate briefs in response.  Akal filed a motion to

dismiss, arguing that German's CRPA state law claims are time-barred and that the IIED

and Title VII claims fail to state a claim under the pleading standards of *Ashcroft v. Iqbal,*

-- U.S. --, 129 S. Ct. 1937, 1949 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 555 (2007).  The MAA has filed a motion to dismiss, or in the alternative, for

summary judgment, arguing that German was not an "employee" and therefore that her

Title VII and state employment discrimination claims should be dismissed for failure to

establish subject matter jurisdiction.  Either way, the agency argues, all of the

discrimination and retaliation claims fail to state a claim under *Iqbal* and *Twombly*.

## ANALYSIS

Both defendants move to dismiss all counts of German's complaint pursuant to

Fed. R. Civ. P. 12(b)(6).  "[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a

complaint and not to resolve contests surrounding the facts, the merits of a claim, or the

applicability of defenses."  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir.

2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of

Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).  When ruling on such a motion, the court

must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).[3]

In the context of employment discrimination, the Supreme Court has clarified that pleadings need not "contain specific facts establishing a prima facie case of discrimination under the framework set forth" in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002); *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). To require otherwise would essentially create a "heightened pleading standard" under which a plaintiff without direct evidence of discrimination would need to plead a prima facie case even though she might uncover direct evidence during discovery. *Swierkiewicz,* 534 U.S. at 511–12. This would create the "incongruous" result of requiring a plaintiff "to plead more facts than [s]he may ultimately need to prove to succeed on the merits if direct evidence of discrimination is discovered." *Id.* Furthermore, before discovery "it may be difficult to

---

[3] German is incorrect in her contention that notice is the only requirement a plaintiff must meet in drafting a complaint. (ECF No. 16, at 1). She is likewise incorrect that pleading standards do not require a "showing" of her claims until the summary judgment stage. To the contrary, at the motion to dismiss stage, Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 556 n.3 (quoting Fed. R. Civ. P. 8(a)(2)); *Giacomelli*, 588 F.3d at 192 ("Rule 8 itself requires a *showing of entitlement* to relief.") (emphasis in original). This showing must consist of at least "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

define the precise formulation of the required prima facie case in a particular case." *Id*. at 512; *see also Twombly*, 550 U.S. at 569–70 (explaining that *Swierkiewicz* is consistent with more recent case law).[4]

Still, to survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal citations and alterations omitted). In assessing whether the complaint meets this minimum standard, the court need not accept legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). The plaintiff's obligation is to set forth sufficiently the "grounds of his entitlement to relief," offering "more than labels and conclusions." *Twombly*, 550 U.S. at 555. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

### A. Title VII Claims

German's complaint does not provide sufficient factual allegations to support her Title VII claims of discrimination, hostile work environment, and retaliation.

A plaintiff may establish a Title VII claim for discrimination through two avenues

---

[4] Although the general 12(b)(6) standard used in *Swierkiewicz* was overruled by *Twombly*, *see Giacomelli*, 588 F.3d at 192 n.1, the analysis cited here remains good law. *See Reed v. Airtran Airways*, 531 F. Supp. 2d 660, 666 (D. Md. 2008) ("The *Twombly* Court made clear that its holding did not contradict the *Swierkiewicz* rule that 'a complaint in an employment discrimination lawsuit [need] not contain specific

of proof. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir.

2004).  First, a plaintiff may demonstrate through direct or circumstantial evidence that

discrimination was a motivating factor in an employer's adverse employment action. *Id.*

Second, employing the pretext framework, a plaintiff may establish the elements of a

prima facie case by showing "(1) membership in a protected class; (2) satisfactory job

performance; (3) adverse employment action; and (4) different treatment from similarly

situated employees outside the protected class." *Coleman*, 626 F.3d at 190 (4th Cir.

2010); *see also White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004) (citing

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

German provides no factual allegations that could be considered direct evidence

of discrimination. The complaint contains the conclusory allegations that the defendants

"harassed and discriminated against [her] because of her race and gender," "terminated

[her] because of her race and gender," and "subjected [her] to different terms, conditions

and privileges of employment because her race and gender [sic]." (Compl. ¶¶ 59–61.)

The complaint does not, however, provide any *specific* instance of discrimination that ties

any of the conduct of her supervisors to her race or gender.  There are no examples of

name-calling or any other racially- or sexually-charged language that would create a

reasonable inference of discrimination.  German is white and, allegedly, the "vast

majority" of Akal employees at BWI are black. (Compl. ¶ 27.)  But this fact alone simply

cannot provide the basis for a reasonable inference that the employment actions taken

---

facts establishing a prima facie case of discrimination.'") (citations omitted).

against her were done so *because* of her race.[5]

Neither does German provide factual allegations sufficient to raise a plausible claim of discrimination under the pretext framework. The complaint provides specific examples of alleged adverse employment actions, such as German's demotion from her position in the MAA office and her eventual termination.[6] But German provides no facts that would support a reasonable inference that these actions were taken because of her race or gender. The complaint does not say whether reasons were given for these actions, or whether other employees were or were not subjected to similar treatment. *Cf. Coleman*, 626 F.3d at 190–91 (upholding a motion to dismiss where plaintiff failed to provide specific facts to support an allegation that individuals treated differently were in fact "similarly situated"). German alleges that she "consistently experienced unequal discipline, unequal terms of employment and unequal conditions of employment," (Compl. ¶ 39), but she provides no factual point of reference, and no description of actual events, to ground these conclusory statements.

German's hostile work environment claim fails for the same reasons. To state a hostile work environment claim, a plaintiff "must allege that (1) she experienced unwelcome harassment; (2) the harassment was based on her gender, race, or age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on

---

[5] The complaint notes that "[i]nitially, the harassment and discrimination to which Plaintiff was being subjected came primarily from co-workers who were African-American and/or Black." (Compl. ¶ 30). But, given that the "vast majority" of workers at BWI were African-American and/or Black, this fact means little without reference to specific words or actions.

[6] Akal argues that German has not alleged sufficient facts to suggest that her reassignment was in fact an adverse employment action. (ECF No. 9, at 9). For the purpose of this motion, this court assumes, without

the employer." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir.

2003). But, as discussed above, German's complaint alleges no specific facts showing

that any harassment or adverse employment actions were based on her gender or race.[7]

Whether German's retaliation claim survives a 12(b)(6) motion is a closer

question. To establish a prima facie case of retaliation, a plaintiff must show that she: (1)

engaged in a protected activity; (2) the employer acted adversely against her; and (3) the

protected activity and the adverse action were causally connected. *Holland v. Washington

Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007). Filing a formal charge with the EEOC or

appropriate state agency is a protected activity. *Kubicko v. Ogden Logistics Servs.*, 181

F.3d 544, 551 (4th Cir. 1999). But a formal charge is not necessary. If a plaintiff shows

that he or she opposed discriminatory practices by "complain[ing] to his or her employer

or participat[ing] in an employer's informal grievance procedure in an orderly and

nondisruptive manner," then the employee's activities are also entitled to protection. *Id.*

To show that an employer "acted adversely," a plaintiff must show only that the action

"might have dissuaded a reasonable worker from making or supporting a charge of

discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)

(internal quotation marks and citation omitted).

---

deciding, that it was.

[7] German alleges that she was subjected to a "campaign" of harassment and discrimination from coworkers, followed by a "crusade" of harassment and discrimination by her supervisors. (Compl. ¶¶ 29, 32). But the only specific instance of "harassment" German cites is an FBI investigation, allegedly undertaken "as a result of Defendant's actions." (*Id.* at ¶ 40). She notes that the FBI investigation resulted in a citation, which was later dismissed. (*Id.* at ¶ 41). But she does not divulge the nature of the investigation, on what basis she believes it was instigated at the behest of the defendants, or on what basis she believes it was related to her race or gender. There is, perhaps, a remote possibility that her supervisors instigated the investigation to persecute German because of her race and gender and that they fed false information to the FBI in order to do so. But without any specific factual context, such an inference is pure speculation and does not rise to the level of plausibility required by *Twombly* and *Iqbal*.

German's May 2007 complaint to the EEOC was a protected activity.  Her reporting of harassment to supervisors with Akal and the MAA could also, depending on the circumstances, be considered protected.  Similarly, she provides several examples of employer actions that could be considered adverse under the *Burlington Northern* standard.  A potential termination obviously could dissuade a reasonable worker from reporting discrimination, but so too could the prospect of a demotion, being reported to the FBI, or being disciplined by being moved to a smaller office or losing access to a computer.

It is less clear that she has sufficiently alleged causation.  German provides no specific facts to support her own conclusions that the actions taken by Akal and the MAA were related to her protected activities.  But, even without other specific evidence, if the employer takes the action "shortly after" learning of the employee's protected activity, courts may infer a causal connection between the two. *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004).  Even so, the only protected activity in the complaint with an identifiable date is German's May 30, 2007, EEOC charge, and the only subsequent adverse employer action cited with sufficient specificity is the MAA's September 28, 2007, letter instructing Akal to remove German from the contract.[8]  This four-month gap may be too long to provide a causal link between the two actions.[9]  While German also

---

[8] The complaint alleges that "[i]n retaliation for Plaintiff filing her EEOC charge of discrimination, Defendants continued harassing and discriminating against Plaintiff and subjected her to various forms of retaliatory discipline." (Compl. ¶ 49).  The allegation is, however, devoid of any reference to specific actions that would allow a court to determine whether they could reasonably be considered "adverse," or dates with which the court could consider a temporal nexus.

[9] "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" *Clark Cnty. Sch. Dist. v. Breeden*, 532

alleges her earlier demotion was "a result of Plaintiff complaining of Defendants' discriminatory and retaliatory conduct," (Compl. ¶ 44), this allegation lacks sufficient information to infer causality through temporal proximity. From the complaint, the court can infer that the demotion occurred after April 2007, but German has provided no dates for her earlier complaints to Akal or MAA supervisors.[10] Unless she can provide more specific facts or dates, German's retaliation claim must also be dismissed.

### B. State Law Discrimination Claims

In addition to her federal employment discrimination claims, German alleges violations of the Maryland state employment discrimination laws. Maryland state law provides a private right of action to an individual who has brought a timely administrative charge of discrimination under state or federal law. Md. Code Ann. State Gov't § 20-1013(a).[11] This private right of action is, however, limited to civil actions "filed within 2 years after the alleged unlawful employment practice occurred." § 20-1013(a)(3).[12] German filed this suit well over three years after her employment at Akal was terminated. As a result, her action under state discrimination law is time-barred.

German contends that interpreting the language of §20-1013(a)(3) to bar this case is nonsensical because it would force plaintiffs like herself to "terminate and abandon"

---

U.S. 268, 273–74 (2001) (citing cases suggesting that a three or four month period is insufficient, alone, to establish causality).

[10] The complaints to Akal supervisors appear to have been made before German's August 2005 promotion, and the complaints to MAA supervisors appear to have been made sometime afterwards. But knowing that complaints were made sometime subsequent to August 2005 and that German's demotion occurred sometime around April or May 2007 does not provide a sufficient temporal nexus.

[11] This private right of action was created by statute when the Maryland Fair Employment Practices Act was amended in 2007. *See* 2007 Md. Laws 1379 (Ch. 176–77). The amendments took effect on October 1, 2007, prior to German's termination.

[12] This language was added by a subsequent amendment to the statute in 2008. *See* 2008 Md. Laws 4582

any agency investigation not completed within two years of the alleged unlawful

employment practice. (ECF. No. 16, at 14.)  Where, as here, the agency investigation

lasts three years, a plaintiff would have to choose to "prematurely foreclose the option of

benefitting from agency enforcement" in order to benefit from the private cause of action.

(*Id.*)  While this rule may put plaintiffs like German in an unenviable position, the plain

language of the statute affords no other possible interpretation, and these claims will be

dismissed.


### C.  Intentional Infliction of Emotional Distress

German suffered two strokes and panic attacks on the job, allegedly as a result of

the harassment referenced in the complaint.  Based on this physical and emotional

trauma, she includes a claim for intentional infliction of emotional distress ("IIED") as

part of Count II of the complaint.  Maryland law, however, provides a demanding

standard for an IIED claim that German's cause of action cannot meet.  The Maryland

Court of Appeals has emphasized that "the tort [of IIED] is to be used sparingly and only

for opprobrious behavior that includes truly outrageous conduct." *Kentucky Fried

Chicken Nat'l Mgmt. v. Weathersby*, 607 A.2d 8, 11 (Md. 1992). "As inappropriate and

repulsive as workplace harassment is, such execrable behavior almost never rises to the

level of outrageousness . . . as to reach the high threshold invariably applicable to a claim

of intentional infliction of emotional distress under Maryland law." *Arbabi v. Fred

Meyers, Inc.*, 205 F. Supp. 2d 462, 466 (D. Md. 2002).  The health problems that German

(Ch. 587–88).

13

suffered were unfortunate and quite possibly could rise to the level of severity required of

health effects for the tort to hold.[13]   But the alleged conduct by Akal and MAA

coworkers and supervisors, while contemptible if true, simply does not meet the high

threshold for "extreme and outrageous" conduct required under Maryland law.  The claim

for IIED will therefore be dismissed.


### D.  MAA as joint employer

The MAA separately seeks dismissal or summary judgment, arguing that German

is an employee of Akal and not of the agency, and therefore the MAA cannot be held

liable for discrimination under Title VII.  Title VII protects "employees" from unlawful

employment practices of their "employers." 42 U.S.C. § 2000e-2(a), -3(a).  And the term

"employee" is defined as "an individual employed by an employer." *Id.* § 2000e(f). Thus,

if German is not an employee of the MAA, her suit against the agency cannot proceed.

While the MAA did not *directly* employ German, "a defendant that does not

directly employ the plaintiff may still be considered an employer under [civil rights]

statutes." *Hukill v. Auto Care, Inc.*, 192 F.3d 437, 443 (4th Cir. 1999).  In order to meet

Title VII's "broad, remedial purpose," courts have taken a functional approach to the

definition of "employer." *Magnuson v. Peak Technical Servs.*, 808 F. Supp. 500, 507–08

(E.D. Va. 1992).  Thus, the definition includes those "who are not employers in

conventional terms, but who nevertheless control some aspect of an individual's

---

[13] Multiple strokes may, under some circumstances, rise to the level of "wounds that are truly severe and incapable of healing themselves." *Arbabi*, 205 F. Supp. 2d at 466 (quoting *Figueiredo-Torres v. Nickel*, 321 Md. 642, 653 (1991)) (emphasis added).

compensation, terms, conditions, or privileges of employment." *Id.* (citations omitted).

Both Akal and MAA may be found to be "joint employers" of German if they have

"jointly exercised the requisite amount of control for Title VII liability to hold." *Williams*

*v. Grimes Aerospace Co.*, 988 F. Supp. 925, 935 n.2 (D.S.C. 1997).

Whether an individual is an employee (and thus whether an entity is an employer)

"is properly determined by analyzing the facts of each employment relationship under a

standard that incorporates both the common law test derived from principles of agency

and the so-called economic realities test." *Haavistola v. Cmty. Fire Co. of the Rising Sun*,

6 F.3d 211, 220 (4th Cir. 1993) (quoting *Garrett v. Phillips Mills Inc*., 721 F.2d 979, 981

(4th Cir. 1983) (internal citation omitted).  This hybrid test continues to weigh the

common law concept of "control" as the most important factor, but it also considers other

important factors, including,

> (1) the kind of occupation, with reference to whether the work usually is
> done under the direction of a supervisor or is done by a specialist without
> supervision; (2) the skill required in the particular occupation; (3) whether
> the "employer" or the individual in question furnishes the equipment used
> and the place of work; (4) the length of time during which the individual has
> worked; (5) the method of payment, whether by time or by the job; (6) the
> manner in which the work relationship is terminated; i.e., by one or both
> parties, with or without notice and explanation; (7) whether annual leave is
> afforded; (8) whether the work is an integral part of the business of the
> "employer"; (9) whether the worker accumulates retirement benefits; (10)
> whether the "employer" pays social security taxes; and (11) the intention of
> the parties.

*Haavistola*, 6 F.3d at 222 (citing *Garrett*, 721 F.2d at 982). While some of these factors

are more relevant to the independent contractor–employee distinction at issue in *Garrett*,

most of them are relevant in a joint employer setting as well.

In her complaint, German alleges that after a promotion within Akal, "she worked

in an office operated by the MAA." (Compl. ¶ 35.)  There, she reported harassment to her

"supervisors at the MAA." (*Id*. at ¶ 37.)  Eventually, her termination occurred as a result

of actions by the MAA.  According to the complaint, "Jose Santiago Chaves of the MAA

sent a letter to Akal *instructing* that Plaintiff was to be immediately removed from her

duties as a security officer at BWI." (*Id*. at ¶ 50 (emphasis added).)  Applying factors of

the hybrid joint employer test, during the time in which she worked at the "place of

work" furnished by the MAA, German alleges that she was "supervised" by the MAA,

and her termination was effectively directed by the agency.  Under the pleading standard

of *Twombly* and *Iqbal*, German has adequately alleged that MAA exerted the requisite

control to be considered her employer.[14]

      The MAA contends that the contract attached to its motion provides several facts

that weigh against finding German is an employee of the agency.  For example, it alleges,

the contract proves that Akal, not the MAA, is responsible for social security taxes and

any annual leave or retirement benefits accrued by German. (ECF No. 11, at 8.)  The

contract contains a significant amount of material, some of which is favorable to

German.[15]  However, as the MAA notes, if the court considers matters outside of the

---

[14] While the question of whether German is an "employee" of the agency is jurisdictional, the jurisdictional
issue is here "intertwined with the facts that are central to the merits of the dispute." *See Schalk v. Assoc.
Anesthesiology Practice*, 316 F. Supp. 2d 244, 248–49 (D. Md. 2004).  In such cases, it is inappropriate to
resolve the question of employee status pursuant to Fed. R. Civ. P. 12(b)(1). *Id*. at 248, 250 n.6 (refusing to
dismiss an ADA case for lack of subject matter jurisdiction on the question of "employee" status).  Rather,
"the proper course of action is to find that jurisdiction exists and resolve the entire factual dispute by a
proceeding on the merits." *Id*. at 248–49.  For this reason, the court here applies the Rule 12(b)(6) pleading
standards of *Iqbal* and *Twombly*, and (below) the summary judgment standard, instead of the 12(b)(1)
standard for dismissal for lack of subject matter jurisdiction.

[15] For example, various provisions appear to give the MAA ultimate control over personnel decisions,
including specifically those regarding the compliance officer position German held.  The compliance
officer, according to the contract, "will not perform any other functions on this contract, unless approved by
the MAA." (*Id.*, Ex. B, at 24).  In addition, in the technical proposal, Akal appears to be "propos[ing]"

pleadings on a Rule 12(b)(6) motion, it should treat the motion as one for summary judgment to be disposed of under Rule 56, and provide all parties a "reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).  In German's reply brief, she attaches an affidavit, pursuant to Rule 56(d), listing parties she needs to depose and written discovery she needs to complete to "establish that MAA expressed sufficient control in order . . . to be considered [her] employer." (ECF No. 22, Attach. 1, at 2–5.)[16]  Most convincingly, German argues, she needs to discover the facts surrounding the MAA's letter to Akal and the control that the MAA exercised over her termination.  Because the court now lacks sufficient factual context for this critical issue, facts that are peculiarly in the possession of the defendants, it would be premature to grant summary judgment at this juncture.

### E.  Leave to Amend

German has requested the opportunity to amend her complaint in the event this court determines her pleadings to be insufficient. (ECF No. 16, at 15.)  When a plaintiff seeks to amend a complaint before trial, the court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). A court should deny a motion to amend "*only when* the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *HCMF Corp. v. Allen*, 238 F.3d 273, 276 (4th Cir. 2001) (internal quotation marks and citation omitted; emphasis in original).  Given, in particular, the EEOC's statement in its

---

specific individuals to fill certain higher level positions, including that of compliance officer, again potentially indicating that the MAA had ultimate control over individuals in that position. (*Id.*)

determination letter that "credible witness testimony was obtained in support of Plaintiff's allegations of racial harassment," this court cannot be sure that amendment would be futile, at least as to German's Title VII claims.  Her request, therefore, will be granted as to her claims under Title VII.  Leave to amend will be denied as to her state law claims under the CRPA and for IIED.

## **CONCLUSION**

For the foregoing reasons, defendants' motions to dismiss for failure to state a claim will be granted as to all counts.  Plaintiff will be granted leave to seek to amend her Title VII claims only.  Defendant MAA's motion to dismiss or for summary judgment as to plaintiff's employee status will be denied without prejudice.

A separate order follows.

November 29, 2011                                    /s/
            Date                              Catherine C. Blake
                                              United States District Judge

---

[16] The court expresses no opinion on whether all the discovery sought is necessary.

18